**SO ORDERED,**

*[signature]*

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: August 7, 2023**

The Order of the Court is set forth below. The docket reflects the date entered.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: BENNY R. KNIGHT SR.** | **CASE NO. 15-50011-KMS** |
| **DEBTOR** | **CHAPTER 7** |

## OPINION AND ORDER
## <u>OVERRULING OBJECTION TO EXEMPTIONS</u>

This matter is before the Court on the Objection to Exemptions by Ellen Knight, widow of E. Harold Knight, and by Harold's heirs and other persons with an interest in Harold's real estate or assets, ECF No. 83, with response by Debtor Benny R. Knight Sr., ECF No. 86. Harold, who was Benny's brother, had filed the initial objection. *See* ECF No. 24. The administratrix of Harold's estate ("Harold's Estate" or "Estate") has now been substituted as the proper party in interest, Harold having died two years ago. *See* ECF No. 124. The parties agree that the Objection will be decided on briefs and stipulated facts. ECF No. 100. This proceeding is core under 28 U.S.C. § 157(b)(2)(B).

The Objection is the latest salvo in a decades-long sibling feud. Benny and Harold owned and operated a business together "for a number of years," until Benny had a "physical altercation" with Harold's two sons. Joint Statement of Undisputed Facts ("Stipulated Facts"), ECF No. 108 at 1, ¶¶ 4-5. Benny fired Harold, and "litigation ensued." *Id.* at 2, ¶ 6.

1

It is now some twenty-four years since the fight; thirteen years since Harold won a related judgment against Benny for approximately $1.75 million in a Mississippi chancery court; seven years since this Court held nondischargeable the $1.25 million that had survived on appeal; four years since the same chancery court ruled in a second lawsuit that Benny fraudulently transferred homestead property to his wife, Amy Knight, to keep Harold from collecting on the first judgment; and six months since the chancery court made the fraudulent transfer ruling final.

In this chapter 7 case, Benny seeks to claim homestead and "wildcard" exemptions[1] in the real property that the chancery court held he fraudulently transferred: 3309 Milstead Road, Gautier, Mississippi ("Homestead Property" or "Property"). Harold's Estate objects, arguing that at the time of the Petition, Benny did not own the Property, whether because the chancery court divested him of ownership or because he had conveyed title to Amy prepetition.

The Estate's argument fails. The Property is subject to both the homestead exemption and the wildcard exemption, and the Objection is overruled.

## FACTS[2]

### I. Chancery Court

In September 2010, Benny and Amy each quitclaimed their interest in the Homestead Property to Amy. Quitclaim Deed, ECF No. 110-3. This transfer occurred approximately two months after the Chancery Court of Jackson County, Mississippi, ("Chancery Court") issued findings of fact, conclusions of law, and a preliminary judgment that Benny had breached his

---

[1] The wildcard exemption gives Mississippi residents who are at least 70 years old an additional $50,000 exemption applicable to any kind of property. Miss. Code Ann. § 85-3-1(h). Mississippi's state-law exemptions apply in bankruptcy because Mississippi opted out of the federal exemption scheme. *See* 11 U.S.C. § 522(b)(2) (providing for exemptions listed in the Bankruptcy Code unless not authorized by applicable state law); Miss. Code Ann. § 85-3-2 (federal exemptions prohibited).

[2] Facts include the Stipulated Facts, supported by the parties' exhibits, and procedural history from the bankruptcy record.

fiduciary duties to Harold as minority shareholder and violated the wrongful termination clause of Harold's employment contract. *See* Prelim. J., ECF No. 110-2 at 10, 12. The final judgment ("Chancery Judgment I") was rendered some months later. *See* ECF No. 110-4 at 2.

Approximately four years later, Benny filed this bankruptcy case, in which only one proof of claim was filed: Harold's, for a judgment lien of $1,775,223.75. Cls. Reg.; Cl. No. 1-1 at 1. Based on the factual findings supporting Chancery Judgment I, this Court held the lien nondischargeable in the amount of Chancery Judgment I that had been affirmed on appeal, which was $1,254,319. *See Knight v. Knight (In re Knight)*, Adv. No. 15-06011-KMS, Summ. J., Adv. ECF No. 30 at 8, 10 (Bankr. S.D. Miss. Mar. 23, 2016) (citing *Knights' Piping, Inc. v. Knight*, 123 So. 3d 451, 460 (Miss. Ct. App. 2012)).

Approximately one year after Chancery Judgment I, Harold filed his second chancery court action ("Fraudulent Transfer Action"), against Benny, Amy, and an LLC to which Benny and Amy had allegedly transferred their interests in some riverfront property. *See* Am. Compl., ECF No. 34-4 at 5, ¶ 16. As to the Homestead Property, the Fraudulent Transfer Action alleged that the transfer "was done without the payment of adequate consideration and with the intent to hinder, delay or defraud Harold Knight from collecting on his claims and judgment against Benny" in Harold's first chancery action. *Id.* at 8, ¶ 28. Harold later filed a Second Amended Complaint, adding defendants and alleging more fraudulent transfers. *See* ECF No. 114.

The Fraudulent Transfer Action was pending when Benny filed this bankruptcy case. On Harold's motion for abstention or for relief from the automatic stay, ECF No. 34, this Court entered the parties' agreed order modifying and lifting the stay to permit the Fraudulent Transfer Action "and associated relief as requested therein" to go forward in the Chancery Court. Order, ECF No. 48 at 1. That "associated relief" constituted money damages, attorney's fees and costs,

3

a judgment invalidating and setting aside the transfers, disgorgement of monies obtained from the transfers, an accounting, and the establishment of a constructive trust. *See* ECF No. 34-4 at 11. The Second Amended Complaint requested the same relief. *See* ECF No. 114 at 13.

Approximately four years after the stay was lifted, the Chancery Court issued an order granting Harold's motion for partial summary judgment against Amy as to the Homestead Property and holding that Benny's conveyance to her was fraudulent and therefore void ("Partial Summary Judgment Order").[3] *See* ECF No. 109-1 at 1, 8. The court also ordered that Harold had "superior right, interest, possession and ownership ahead of the interests of [Amy and Benny]," subject to further order as to Amy, and that Benny had "no right of possession of the home, personal and real property." *Id.* at 9. The court further ordered that the Homestead Property be sold "to satisfy the Judgment of E. Harold Knight.," *id.*, meaning Chancery Judgment I, which the court knew had been held nondischargeable, *id.* at 4 ("As to Harold's judgment against Benny, the [Bankruptcy] Court held that Benny could not discharge the amount of $1,254,319.00 in his Chapter 7 bankruptcy."). The court ordered that Amy receive the first $50,000 of sale proceeds, with the balance "[to] be applied to the Judgment balance plus interest and less any credits for payment of Harold Knight," with Benny due any amount left over. *Id.* at 9-10. Finally, the Partial Summary Judgment Order stripped Benny of any exemption in the Homestead Property. *Id.* at 8-9, 10.

But under the Mississippi Rules of Civil Procedure, the Partial Summary Judgment Order was not "a final decree," Miss. R. Civ. P. 54(a). The Chancery Court had adjudicated Harold's

---

[3] The only conveyance of the Homestead Property before this Court is the September 2010 quitclaim deed. But according to the Chancery Court, this conveyance was Benny's second transfer, the first having occurred four months earlier. *See* ECF No. 109-1 at 4-5 ("On May 11, 2010, . . . Benny Knight conveyed his part of his homestead . . . to his wife . . . . Further, on September 20, 2010, the entire property was transferred into [her] name."). This misalignment between the Partial Summary Judgment Order and the Stipulated Facts and exhibits is immaterial; the Chancery Court held that both transfers were fraudulent, *id.* at 8.

summary judgment motion against only Amy and only in part. ECF 109-1 at 1 ("[T]he other remaining aspects of the Plaintiffs' Amended Motion for Summary Judgment shall be continued until further Order of this Court."). Consequently, the Partial Summary Judgment Order did not terminate the litigation. *See* Miss. R. Civ. P. 54(b) (providing that an order "shall not terminate the action as to any of the claims or parties" if it adjudicates "fewer than all of the claims or the rights and liabilities of fewer than all the parties"); s*ee also Rigdon v. Miss. Farm Bureau Fed'n*, 22 So. 3d 321, 325 (Miss. Ct. App. 2009) (finding that order "adjudicat[ing] *all* claims against *all* defendants" was a final judgment).

Mississippi preclusion law requires a final judgment in the first action. *Vaughn v. Monticello Ins. Co.*, 838 So. 2d 983, 986 (Miss. Ct. App. 2001). And it is Mississippi preclusion law that determines how the Chancery Court's rulings affect this proceeding. *See* discussion *infra* Law, Part I, Section B. So this Court told the parties that the Objection, which by then had been briefed, would be held in abeyance pending their submission of either a judgment or a stipulation that would obviate the need for a judgment. ECF No. 130 (status conf.).

Several months after the status conference, the parties submitted the Order Amending and Finalizing Judgment ("Chancery Judgment II"), ECF No. 136. Chancery Judgment II decreed that all issues before the Chancery Court had been fully resolved and that Chancery Judgment II was a final judgment. *Id.* at 2. Chancery Judgment II also amended the Partial Summary Judgment Order to strike the provisions stripping Benny of his homestead exemption, *id.* at 1, instead "defer[ring] to the United States Bankruptcy Court to decide the issue," *id.* at 2. As to all other provisions, the Partial Summary Judgment Order would "remain[] in full force and effect." *Id.* at 1.

## II. Objections to Exemptions

The Estate's Objection is not the first challenge to Benny's exemptions. Harold objected early in the case to the exemptions Benny initially claimed. In his first Schedule A, Benny valued the Homestead Property at $300,000 and claimed in it an "equitable interest" pending his divorce, ECF No. 10 at 3, Amy holding title by virtue of the 2010 quit claim deed. In his first Schedule C, Benny claimed a homestead exemption of $75,000 and a wildcard exemption of $50,000, also based on an equitable interest. ECF No. 10 at 7 (superseded by Am. Sch. C, ECF No. 28, correcting typographical error). Harold objected that Benny could not claim a homestead exemption in property he did not own, attaching a 2012 title opinion certifying that Amy held title. ECF Nos. 24 at 2, 24-2 at 2.

Harold's objection was held in abeyance pending Benny's divorce proceedings. ECF Nos. 35, 44. Nearly six years passed, and although Benny was still not divorced, the Chancery Court had issued the Partial Summary Judgment Order. Status Rep., ECF No. 75 at 1.

Benny filed an amended Schedule A ("Current Schedule A"), ECF No. 79, and a second amended Schedule C ("Current Schedule C"), ECF No. 80. Current Schedule A values the Homestead Property at $400,000 and lists Benny as sole owner. ECF No. 79 at 4. Current Schedule C claims the same $125,000 total homestead and wildcard exemptions as Benny originally claimed, but it asserts a fee simple interest instead of an equitable interest. ECF No. 80 at 1. Benny bases Current Schedule C on the ruling in the Partial Summary Judgment Order that Benny's conveyance of the Homestead Property was void. ECF No. 109-1 at 8 & n.7; ECF No. 86 at 3 ("Thus the voiding of the quit claim deeds to Amy Knight restored the prepetition title to the [H]omestead [P]roperty to Benny Knight as if those deeds were never executed.").

Benny was seventy-one years old when he filed this case. ECF Nos. 83 at 2, 86 at 1. And

6

he was living on the Homestead Property. Pet., ECF No. 1 at 1.

## LAW

"The party objecting to an exemption in bankruptcy has the burden of proving by a preponderance of the evidence that the exemption is improper." *Cipolla v. Roberts (In re Cipolla)*, 476 F. App'x 301, 305 (5th Cir. 2012); Fed. R. Bankr. P. 4003(c). The Estate did not meet this burden.

The Estate objects to the homestead and wildcard exemptions in Current Schedule C based on one argument: At the time of the petition, Benny did not own the Property.[4] The Estate asserts this argument in two alternatives. In the first alternative as initially presented, Benny did not own the Property because the Chancery Court retroactively divested him of all ownership rights. ECF No. 110 at 6; ECF No. 118 at 4-5. After Chancery Judgment II struck the homestead exemption ruling, this alternative changed to the Chancery Court's having divested Benny of all ownership rights except exemptions. In the second alternative, Benny did not own the Property because he conveyed it prepetition to Amy. ECF No. 110 at 7; ECF No. 118 at 2-4.

The Estate's argument is fatally flawed in both alternatives. As to alternative number one, the Chancery Court did not divest Benny of any ownership rights in the Homestead Property, because the Chancery Court had no subject matter jurisdiction to rule on any issue except whether Benny's transfer of the Property was fraudulent. As to alternative number two, with the Chancery Court's only valid ruling that the transfer was fraudulent, Chancery Judgment II voided the transfer only to the extent necessary to satisfy Harold's claim. Amy did indeed hold

---

[4] In its first brief, the Estate argued also that Benny does not live on the Property. ECF No. 110 at 5-7. But that argument, a bare assertion, appears to have been abandoned. *See* Resp., ECF No. 118. Even if not, it ignores Benny's address as it appears on his petition, declared true and correct under penalty of perjury. *See* ECF No. 1 at 1, 3. It also ignores the Mississippi Code provision that on its face would excuse Benny—seventy-one years old as of the date of the petition—from the homestead occupancy requirement. *See* Miss. Code Ann. § 85-3-21 ("But husband or wife . . . over sixty (60) years of age, who has been an exemptionist under this section, shall not be deprived of such exemption because of not residing therein.").

title to the Property on the date of the petition. But that Amy held record title does not preclude Benny's claiming homestead and wildcard exemptions, because under longstanding Mississippi law, a fraudulent transfer entitles the creditor only to the value the creditor could have reached if the property had not been conveyed. And had Benny not conveyed the Property, Harold could not have reached the amount of Benny's exemptions.

### I. The Chancery Court Did Not Divest Benny of Ownership Rights in the Homestead Property.

*A. The Chancery Court Exceeded the Scope of Stay Relief When It Determined Rights in the Homestead Property.*

The bankruptcy court, by referral from the district court, has exclusive jurisdiction "of all the property, wherever located, of the debtor and . . . of property of the estate" as of the commencement of the case. 28 U.S.C § 1334(e); 28 U.S.C. § 157(a); L.U. Civ. R. 83.6 (Southern District of Mississippi referral rule). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Whether a debtor's interest is property of the estate is a federal question. *In re Ballard*, 238 B.R. 610, 618 (Bankr. M.D. La. 1999).

A debtor's interests in property as of the commencement of the case include an equitable interest in property that was fraudulently transferred:

> The transferee may have colorable title to the property, but the equitable interest . . . is considered to remain in the debtor . . . . We think that when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a "legal or equitable interest[ ]" in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code.

*Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir. 1983) (citing 4A *Collier on Bankruptcy*, ¶ 70.14[1], at 130-31 (14th ed. 1978)) (ruling under Texas Fraudulent Transfers Act); *see also Cage v. Wyo-Ben, Inc. (In re*

8

*Ramba, Inc.)*, 437 F.3d 457, 459 (5th Cir. 2006) ("A debtor has an interest in property if that property would have been part of the debtor's bankruptcy estate had the transfer not occurred.") (discussing in context of preference action).

Consequently, even though Amy held legal title, Benny had an equitable interest in the Homestead Property when he filed this case. That equitable interest was sufficient for the Property to be considered property of the estate under § 541(a)(1). *See Cullen Ctr. Bank & Tr. v. Hensley (In re Criswell)*, 102 F.3d 1411, 1417 (5th Cir. 1997) (discussing and applying rule from *In re MortgageAmerica*).

"Actions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws would interfere with th[e bankruptcy] estate and with the equitable distribution scheme dependent upon it . . . ." *In re MortgageAmerica*, 714 F.2d at 1276. For this reason, such actions are appropriately stayed as "act[s] to obtain possession of property of the estate" under § 362(a)(3). *Id.*

So to continue litigating the Fraudulent Transfer Action, Harold had to move for relief from the automatic stay. *See In re MortgageAmerica*, 714 F.2d at 1275; *see also Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 114 (5th Cir. 1987) ("[C]ontinuation of any proceeding can derive legitimacy only from the bankruptcy court order."); *In re Edwin A. Epstein, Jr. Operating Co.*, 314 B.R. 591, 600 (Bankr. S.D. Tex. 2004) ("It is undisputed that [under 11 U.S.C. § 362(d),] only a bankruptcy court has jurisdiction to terminate, annul or modify the automatic stay.").

Harold's motion for relief was granted by an agreed order, which has the dual nature of an enforceable judicial order and a contract. *See United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 349 (5th Cir. 1998) (discussing consent decrees); *see also In re El Paso Refinery, L.P.*,

9

244 B.R. 613, 622 (Bankr. W.D. Tex. 2000) ("[A]ny agreed order compromising a dispute is, by its nature, a consent decree."). "General principles of contract interpretation govern," including that agreed orders "are to be construed only by reference to the 'four corners' of the order itself." *Chromalloy*, 158 F.3d at 349-50.

"The bankruptcy court is in the best position to interpret its own orders." *Thornburg v. Lynch (In re Thornburg)*, 277 B.R. 719, 725 (Bankr. E.D. Tex. 2002) (cleaned up). The Mississippi Supreme Court agrees. *See Mariner Health Care, Inc. v. Estate of Edwards ex rel. Turner*, 964 So. 2d 1138, 1157-58 (Miss. 2007) (declining to interpret stipulation on stay relief "negotiated in and authorized by the bankruptcy court" and "leav[ing] this determination to the bankruptcy court"). Here, the four corners of the Agreed Order encompass only the relief requested in the Amended Complaint, which Harold attached to his motion and which the Agreed Order references, ECF No. 48 at 1 ("that certain action styled, *E. Harold Knight, et al., vs. Amy Knight, Benny Knight, et al.*, being Cause No. 2011-1355, and *associated relief as requested therein*" (emphasis added)).

Only one of the Chancery Court's rulings is within the scope of the Agreed Order: that Benny's conveyance of the Homestead Property was fraudulent and therefore void, ECF No. 109-1 at 8. As to all other rights in the Homestead Property, this Court retained its exclusive jurisdiction as conferred by federal law over property of the estate. *See Gruntz v. Cty. of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir. 2000) ("[In] federal in rem proceedings under the Bankruptcy Code, . . . a 'federal court having custody of such property has exclusive jurisdiction to proceed.'" (quoting *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964))). Accordingly, the stay precluded all other Chancery Court determinations.

"Any state court modification of the automatic stay would constitute an unauthorized

infringement upon the bankruptcy court's jurisdiction to enforce the stay." *Id.* It follows that the Chancery Court had no jurisdiction to determine that Harold had "superior right, interest, possession and ownership ahead of the interests of [Amy and Benny]" or that Benny had no right of possession of the Homestead Property, ECF No. 109-1 at 9. It had no jurisdiction to order the Homestead Property sold or to direct the disposition of sale proceeds, *id.* at 9-10. And it had no jurisdiction to order, as to those determinations, that the Summary Judgment Order remains "in full force and effect," ECF No. 136 at 1.

The question is how the Chancery Court's lack of subject matter jurisdiction affects the recognition those rulings receive here.

*B. The Chancery Court's Rulings that Exceeded the Scope of Stay Relief Are Void for Lack of Subject Matter Jurisdiction.*

As part of the full faith and credit analysis under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts "look to state law to determine how much credit the state judgment deserves." *A.L.T. Corp. v. Small Bus. Admin.*, 801 F.2d 1451, 1456 (5th Cir. 1986). Under Mississippi law, judgments rendered without subject matter jurisdiction are void. *Overbey v. Murray*, 569 So. 2d 303, 306 (Miss. 1990). Consequently, the only ruling entitled to full faith and credit in this Court is that Benny's conveyance of the Homestead Property to Amy was void as a fraudulent transfer.[5] *See Browning v. Navarro*, 826 F.2d 335, 341 n.9 (5th Cir. 1987) (noting

---

[5] The Chancery Court's fraudulent transfer ruling is entitled to full faith and credit even if it was legally incorrect—which it might have been. *See Salazar v. U.S. Air Force*, 849 F.2d 1542, 1544 (5th Cir. 1988) (stating that merits of final, unappealed state court judgment, "highly questionable at best," were not before the court). Before Benny transferred his interest in the Homestead Property, he would have been entitled to exemptions. It is long-settled law in Mississippi that a transfer of exempt property is not fraudulent, regardless of intent. *See, e.g., Joe T. Dehmer Distribs, Inc. v. Temple*, 826 F.2d 1463, 1467 (5th Cir. 1987) (recognizing under Mississippi law that conveyance of homestead by debtor to wife up to amount of homestead exemption does not defraud creditors); *Howell v. Gen. Cont. Corp.*, 91 So. 2d 831, 836 (Miss. 1957) (holding that debtor could convey to wife the extent and value of homestead up to amount of exemption regardless of his intention toward creditors); *Orgill Bros. v. Gee*, 120 So. 737, 738 (Miss. 1928) ("An insolvent debtor may make a valid gift of his property, exempt from execution. . . . A sale thereof is valid, even though made with intent to defraud his creditors."); *see also* Uniform Fraudulent Transfer Act, Miss. Code Ann. § 15-3-101(b)(ii) (defining "asset" to exclude "[p]roperty to the extent it is generally exempt under nonbankruptcy law"). Consequently, Benny's conveyance could have been fraudulent only if the value of his

11

that entire judgment was not void, only part that exceeded bankruptcy court's order).

## II. Chancery Judgment II Voided Benny's Fraudulent Transfer, but Only as to Harold.

Addressing the effect of the Chancery Court's fraudulent transfer ruling requires reconciling the usage of "void" and "voidable" in Mississippi statutes and judicial opinions. Under Mississippi's current law, the Uniform Fraudulent Transfer Act (MUFTA), Miss. Code Ann. §§ 15-3-101 – 15-3-121 (eff. July 1, 2006), a fraudulent transfer is voidable. *See* Miss. Code Ann. § 15-3-113(2) ("to the extent a transfer is voidable in an action by a creditor . . . ." (referencing Miss. Code Ann. § 15-3-111(1)(a), which provides as a remedy "avoidance of the transfer . . . to the extent necessary to satisfy the creditor's claim")). But under Mississippi's historical laws, fraudulent transfers were void. *See* Miss. Code Ann. § 15-3-3 ("clearly and utterly void") (derived from Code 1942 and Code 1930; repealed 2006). "The distinction should be evident. *Void* = absolutely null. *Voidable* = capable of being voided or confirmed." *Void; Voidable*, *A Dictionary of Modern Legal Usage* (2d ed. 2011).

Because of the void/voidable distinction, cases decided before 2006, when fraudulent transfers were void, would seem not to apply to cases—including this one—that arose after 2006 when fraudulent transfers became merely voidable. But Bryan Garner, the *Dictionary*'s author, observes that "confusion seems to abound" in the use of "void" and "voidable," *id.*, with "void" and "null and void" often being interpreted to mean "voidable," *id., Null and Void*.

So perhaps unsurprisingly, "void" as used by courts applying pre-MUFTA law did not necessarily mean the conveyance was absolutely null. *See, e.g., United States v. Fid. & Dep. Co. of Md.*, 214 F.2d 565, 568 (5th Cir. 1954) ("void as against creditors only, or, to speak accurately, is voidable by creditors at their election" (quoting *Barwick v. Moyse*, 21 So. 238, 239

---

interest exceeded the value of the exemptions. *See Stringer v. Craft*, 55 So. 2d 869, 871 (Miss. 1951) (holding that conveyance could be fraudulent against a creditor when homestead was shown to be worth more than value allowed exempt).

(Miss. 1897))). The conveyance was good as between the parties. *Barwick*, 21 So. at 239. And it vested title in the grantee, subject only to action by the creditor or other persons injured by the conveyance. *Shaw v. Millsaps*, 50 Miss. 380, 384 (Miss. 1874); *see also Kelly v. Roby (In re Estate of Roby)*, 84 So. 3d 786, 795 (Miss. Ct. App. 2011) ("[F]raudulent conveyances are to be considered 'clearly and utterly void' *as against a creditor*." (emphasis added)). Title was "esteemed" to remain with the grantor "for the purpose of paying his debts." *Shaw*, 50 Miss. at 385-86.

As these cases illustrate, more than a century of Mississippi law informs the outcome in cases under MUFTA. Consistent with this entire body of law, Chancery Judgment II voided Benny's transfer of the Homestead Property only as to Harold.

### III. The Fraudulent Transfer Did Not Divest Benny of Homestead and Wildcard Exemptions.

"[W]hen a debtor claims a *state-created* exemption [as authorized under 11 U.S.C. § 522], the exemption's scope is determined by state law . . . ." *Law v. Siegel*, 571 U.S. 415, 425 (2014). Whether the debtor is eligible for the exemption is determined by the facts and law that existed on the date of the petition. *Brown v. Sommers (In re Brown)*, 807 F.3d 701, 708 (5th Cir. 2015).

On the date of the petition, Amy held legal title to the Property. But also on the date of the petition, Benny's conveyance to her was subject to the Fraudulent Transfer Action and was therefore voidable as to a creditor, Harold.

"If it is his as to creditors, it is his so as to allow him to claim a homestead exemption in it." *Dulion v. Harkness*, 31 So. 416, 417 (Miss. 1902). Consequently, on the date of the petition, Benny could have claimed homestead and wildcard exemptions notwithstanding Amy's title. *See Edmonson v. Meacham*, 50 Miss. 34, 40 (Miss. 1874) (citing with approval decisions in other

13

states "that although there may have been a fraudulent conveyance, yet that does not defeat the homestead"); *Thomason v. Neeley*, 50 Miss. 310, 313 (Miss. 1874) ("In effect, the debtor owns the property with the same extent of interest as though he had never conveyed, and the creditor has a lien under his judgment . . . . [T]he creditor can only sell under his execution so much of the property as is not exempt from seizure and sale.").

Arguing that Benny is not entitled to the exemptions, the Estate cites *In re Littleton*, No. 08-12395, 2009 WL 1916729 (Bankr. N.D. Miss. July 2, 2009). The Estate asserts that the facts in *Littleton* are similar to the facts here. ECF No. 118 at 3. But they are not.

*Littleton* was decided in relevant part under 11 U.S.C. § 522(g)(1), which specifies circumstances in which a debtor may claim an exemption in property that comes into the bankruptcy estate through the trustee's avoiding powers. Under this provision, the debtor may not claim an exemption in property the debtor voluntarily transferred. 11 U.S.C. § 522(g)(1)(A).

But this condition applies specifically to "property that the trustee recovers." 11 U.S.C. § 522(g). Here, a creditor recovered the property.

This distinction is fatal to the Estate's argument. "'Trustee' and 'creditor' are separate nouns, with distinct meanings, and the Bankruptcy Code does not treat them as synonyms." *Stornawaye Fin. Corp. v. Hill (In re Hill)*, 562 F.3d 29, 33 (1st Cir. 2009). The following Code provisions confer the trustee's avoiding powers: 11 U.S.C. §§ 510(c)(2), 542, 543, 550, 551, and 553. *See* 11 U.S.C. § 522(g). In chapter 7 cases, these powers are exclusive to the trustee. 562 F.3d at 33. And even if they were not, "a creditor who files a pre-petition suit under state law to annul a fraudulent conveyance cannot conceivably be thought to have availed himself of any of these powers. . . . [because] the bankruptcy estate was not even in existence when the creditor

14

sued." *Id.* at 34. *Littleton* is therefore inapposite.

## CONCLUSION

Whether as to Chancery Judgment II or Amy's holding record title, the Estate's argument that Benny is not entitled to his claimed exemptions is without merit. Accordingly, Benny is entitled to a $75,000 homestead exemption and a $50,000 wildcard exemption in the Property.

## ORDER

The Objection to Exemptions is therefore **ORDERED OVERRULED**.

*##END##*